IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

STEVEN BUCKLEY and YOLANDA ALMONS,
Individually and as Personal Representative on
Behalf of the Wrongful Death Beneficiaries of
Bobbie Jenkins, Deceased                                                                    PLAINTIFFS

V.                                                                    CIVIL ACTION NO. 5:22–cv–26-DCB-FKB

MANAGEMENT & TRAINING CORPORATION and
JOHN AND JANE DOES 1-100

## COMPLAINT
### *Jury Trial Demanded*

1.  This Complaint is brought by Steven Buckley and Yolanda Almons, Individually and as Personal Representative on Behalf of the Wrongful Death Beneficiaries of Bobbie Jenkins, Deceased, (herein after collectively as "Plaintiffs") by and through the undersigned counsel, against Management and Training Corporation and John and Jane Does 1-100. In support therefore, Plaintiff states as follows:

### JURISDICTION AND VENUE

2.  This cause of action arises under the United States Constitution, as well as the Civil Rights Act, 42 U.S.C. § 1983. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, § 1332, and § 1343. The Court also has pendent jurisdiction over the Plaintiff's state causes of action.

3.  Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because the events complained of occurred in this judicial district and division.

**PARTIES**

4. Plaintiff Steven Buckley (hereinafter "Buckley") is an adult resident citizen of Marion County, Mississippi. However, at all times, material to this Complaint, he was a prisoner incarcerated at East Mississippi Correctional Facility (hereinafter "EMCF"). Substantial acts, omissions, and events that caused Plaintiff Buckley's injuries occurred in Lauderdale County, Mississippi.

5. Plaintiff Yolanda Almons is the mother of Bobbie Jenkins (hereinafter "Jenkins), deceased minor child. Jenkins was brutally stabbed and killed on November 26, 2021, while he was an inmate at EMCF. Substantial acts, omissions, and events that caused Jenkins' death occurred in Lauderdale County, Mississippi. Plaintiff is an adult resident citizen of Hinds County, Mississippi, and brings this action individually on behalf of the decedent's surviving heirs/wrongful death beneficiaries.

6. Defendant, Management and Training Corporation (hereinafter, "MTC"), a national for profit prison operator, incorporated existing in the state of Utah, was given a contract by the Mississippi Department of Corrections ("MDOC") in April, 2012 for the management and oversight of the prisons daily operations, which it has the responsibility for providing humane care and treatment consistent with all constitutional and ACA standards. MTC's 5,545 employee corrections division operates twenty-four (24) correctional facilities throughout the United States, with seventeen (17) contracts with state correctional departments and seven (7) with federal correction agencies. The acts, omissions and events giving rise to Plaintiffs' complaint occurred under MTC's management. MTC principal place of business is located at 500 N Marketplace, Drive, Centerville, Utah 84014, and is subject to the personam jurisdiction of the Court by service

of process upon is appointed registered agent, CT Corporation System, located at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

7. Plaintiffs are ignorant as to the identities of Defendant John and Jane Does 1-100 who are unknown officers, employees, agents, and or servants of MTC. Plaintiffs will amend this Complaint to allege their true names and allege that each of the fictitiously named Doe Defendants are responsible in some manner for the occurrences herein alleged, and the decedent and Buckley's damages, as alleged herein, were proximately caused by their conduct. Plaintiffs upon information and belief, assert that the Doe Defendants were the officers, agents, servants, and employees of the Defendant, and were at all times acting under color of law with the permission and consent of Defendant within the course and scope of their employment.

## FACTS

### *Gang Violence and Inhuman Prison Conditions at EMCF*

8. EMCF is located in Meridian, Mississippi and has a capacity of approximately 1500 inmates.

9. For years prior to the attack on Jenkins and Buckley, which is the subject of this lawsuit, Defendants have subjective knowledge that EMCF is besieged gang violence and rampant contraband. The gangs control every aspect of prison life by using violence, bribery and extortion. Gangs determine where inmates sleep if they eat, shower, or how often they make phone calls. These debts are paid with money, food, tasks such as carrying contraband for the gang, or even online currency like Green Dots.

10. In a federal lawsuit, former Warden Frank Shaw testified that he could not guarantee that the prison was capable of performing its most basic function.[1]

---

[1] *Dockery, et. al v. Epps, et. al*, In the Southern District Court of Mississippi; 3:13CV326-TSL- JMR.

3

11. Surveillance video exists showing prison guards taking nearly thirty (30) minutes to respond to an assault on an inmate.

12. MTC and its employees have simply turned a blind eye to the widespread gang violence and inhuman prison conditions, either because they are being paid to "look the other way" or simply do not care.

13. MTC has subjective knowledge that its employees assist gang members by bringing in contraband. In return, gang members pay EMCF employees via "green dots cards".

14. In some instances, such as in this case, EMCF employees are affiliated with gang members and afford them favorable treatment and even aid and abet the gang members in their illicit behavior. Gang members sell drugs, cell phones and other contraband with the assistance of and/or approval of MTC employees.

### *Brutal Assault on Buckley and Jenkins*

15. At the time of the assault on Buckley and the death of Jenkins, both were incarcerated at EMCF. Jenkins and Buckley were both housed in the same zone and their cells were near each other. They were good friends.

16. It was business as usual at EMCF on the Friday morning after Thanksgiving, November 26, 2021. Jenkins asked Sgt. Joni Collins about her favorable treatment of the "Vice Lord" gang members over other inmates. Sgt. Collins got very angry and frustrated with Jenkins. After the conversation, Jenkins continued about his business spending the day in his cell.

17. Later that afternoon, around 3:00 p.m. a group of approximately four or five "Vice Lord" gang members entered his "cell" because the lock was "non-operational".

18. It is well documented that cell doors in the most of all the units at the facility can easily be "rigged" to remain unlocked when shut. In most instances – the locations are not operational-allowing inmates to leave their cells at any time and to enter the cells of others, resulting in many assaults, like the assault of Jenkins and Buckley.

19. Once the Vice Lords, entered Jenkins's cell, they quickly approached him with a box cutter, ice pick, a knife, and prison made shivs or shanks. They began to brutally stab him multiple times. The horrific assault continued for some time.

20. Buckley, who was asleep in his cell, which was near Jenkins 'cell was awaken by the sound of screaming. Before Buckley could get out of his bunk and look out his cell bars to see what was going on, a group of Vice Lord gang members entered his cell, with knives, shivs and/or shanks. One of the assailants said, "Get that Nigga Too". The Vice Lord Gang members proceeded to beat and stab Buckley with a box cutter, ice pick, a knife, and prison made shanks in his head, chest, back, arm, leg and near his groan area. He was stabbed more than twenty times. Fortunately, the Vice Lord gang members left his cell, and he was able to walk out and look for help. On his way to find help, he saw Jenkins in his cell, who had also been stabbed and beaten. Buckley managed to get Jenkins out the cell and in the hallway of the zone.

21. Buckley, Jenkins, and other inmates were screaming for help during the assault and afterwards.

22. Approximately fifteen to thirty minutes after the assault, Sgt. Collins and another correctional officer entered the zone and saw Jenkins and Buckley, bloody and lying in the hallway.

23. The Vice Lord gang members, screamed to the correctional officers, "Get out of here. Let those Niggas bleed out." Sgt. Collins looked at Jenkins and Buckley and laughed. Sgt.

Collins and the other correctional officers walked out the zone without offering any aid to Jenkins and Buckley.

24. As requested by the Vice Lord gang members, no help arrived and Jenkins unfortunately, bleed to death from his injuries.

25. Almost two hours after the assault, help finally arrived, Jenkins was pronounced dead, and Buckley was taken to medical and ultimately transferred to the hospital.

### *MTC Deliberately Ignored Potential Harm to Buckley and Jenkins*

26. Prior to the day of the assault both Jenkins and Buckley had repeatedly complained to MTC officials about the favorable treatment of Vice Lord gang members by MTC staff. Although, the Vice Lord members were known as "Security Threat Groups" ("STG's), a label given to official prison gangs, the Vice Lord gang members were given jobs inside the prison such as working in the kitchen and other areas. According to MTC's policy, STG's are not allowed such jobs because they would have access to other inmates and pose a security risk. Despite this policy, known affiliated Vice Lord gang members were given prison jobs by MTC employees.

27. Additionally, both Jenkins and Buckley had complained about Sgt. Collins favorable treatment to Vice Lord gang members and that they had been threatened by the gang members.

28. MTC and employees had subjective knowledge of the potential harm against both Jenkins and Buckley and deliberately ignored their concerns and fears for their safety.

29. Weapons, such as those used to stab Jenkins and Buckley are readily available at EMCF. EMCF employees smuggled in the contraband or allowed inmates to gain access to these items. MTC has failed to implement policies and procedures that would curtail the availability of these weapons.

30. MTC officials and employees are aware of the prevalence of weapons at the prison. Guards are being paid by gang members to simply look the other way. Others did not care or did not report the incidents due to fear of gang retaliation. Regardless, MTC officials failed to take proper precautions and safety measures to curtail weapons inside the prison.

31. Upon information and belief, MTC officials failed to conduct enough shakedowns, and when shakedowns were done, the guards would either ignore contraband or simply not report it due to the fact that they were being paid by gang members. Such actions and inactions contribute to the incident in which the decedent died, and Buckley sustained permanent injuries.

32. MTC was understaffed on the day the decedent was killed and Buckley was stabbed. MTC has a pattern and/or practice of understaffing at EMCF. The guards who are on duty are also inadequately trained and/or supervised to handle the prison population which exists at EMCF. MTC's actions and inactions were negligent, grossly negligent, and/or deliberately indifferent to the safety and well-being of the decedent and Buckley.

33. EMCF is besieged with violence. Despite such conditions, MTC inadequately staffs the prison with enough security officers. Further, the security officers working are inadequately trained and/or supervised. As such, inmates live in constant fear of being attacked. The decedent's death and the attack on Buckley was not only foreseeable it was inevitable.

34. MTC has been sued numerous times for similar conduct as alleged in this complaint. There have been many more inmate-on-inmate attacks prior to this incident that did not result in a lawsuit, but which placed MTC and its policymakers on notice about the violent atmosphere existing at EMCF and the staff corruption which causes and/or contributes to this. Despite this knowledge, MTC's policymakers refuse to enforce policies and procedures to control

and/or reduce inmate on inmate violence. Such actions by MTC's policymakers are negligent, grossly negligent and/or deliberately indifferent.

## COUNT 1:

### § 1983 CAUSE OF ACTION:
### UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT, FAILURE TO TRAIN, SUPERVISE, STAFF AND DISCIPLINE

35. Plaintiffs incorporate all allegations set forth in paragraphs 1 through 34.

36. MTC is treated as "municipality" for the purposes of complaints brought pursuant to 42 U.S.C. § 1983. MTC can be held liable for the decedent's death and Buckley's injuries if their exist a custom or policy which caused a constitutional deprivation which attributed to MTC's policy makers.

37. MTC's policymakers, including the Warden, Deputy Warden and Doe Defendants 1-100, have established customs, policies and practices which created unconstitutional conditions of confinement, Defendants MTC and Doe Defendants 1-100 violated clearly established constitutional rights of the decedent, including but not limited to:

   a. Cruel and unusual punishment under the Eighth and Fourteenth Amendments;

   b. Decedent and Buckley's right not be deprived of liberty without due process of law;

   c. Decedent and Buckley's right to be safe and protected from injuries while in Defendants' custody;

   d. Decedent and Buckley's right to be protected by the prison officials and guards while under their control; and

   e. Decedent and Buckley's right to be free from excessive and unreasonable force.

38. As a direct and foreseeable result of Defendants' action, decedent and Buckley suffered a brutal attack and death. Both decedent and Buckley suffered severe physical injuries, emotional distress, mental anguish, as well as pain and suffering.

39. Defendant MTC, by and through Doe Defendants 1-100 in their individual and official capacities, established customs, policies and practices which directly and proximately caused the deprivation of the decedent and Buckley's constitutional rights as alleged herein. Defendant and the Doe Defendants were deliberately indifferent to the safety of the decedent, Buckley, and other inmates at EMCF. These policies created unconstitutional conditions of confinement.

40. Such unwritten policies, customs and practices include but are not limited to the following:

   a. Inadequate and improper training, supervision and discipline of EMCF corrections officers;

   b. Inadequate and improper procedures and practices in screening hiring, training, supervising and disciplining officers who have improper relationships with inmates, specifically gang members and who routinely bring in contraband to those inmates creating a dangerous prison environment;

   c. In adequate and improper procedures, policies and practices for investigating improper activities by EMCF correctional officer either through offender complaints of misconduct or through internally-initiated complaints or investigations;

   d. Inadequate or improper procedures, policies and practices for identifying and taking appropriate action against EMCF correctional officers, who are in need of re-training, corrective measure, reassignment, other non-disciplinary actions, through a positive or early warning system designed to prevent such conduct;

  e. Failing to enforce policies and procedures with regards to the management and control of Security Threat Groups in violation of MDOC policy:

  f. Failing to adequately staff EMCF with trained and qualified guards and allowing the prison to be unstaffed leading to an increase in inmate-on-inmate assaults and deaths;

  g. Housing gang members with inmates who have renounced their gang affiliation;

  h. Failing to follow policies and procedures to eliminate and/or control the flow of contraband, including but not limited to drugs and shanks, in the prison leading to an increase in inmate-on-inmate violence;

  i. Failing to enforce the policy of requiring guards to make security rounds to check on inmates which also leads to an increase of inmate-on-inmate violence.

41. All the actions by MTC, its policy makers, and Doe Defendants 1-100 were done with deliberate indifference to the constitutional rights of EMCF inmates, specifically the decedent and Buckley, and caused and/or contributed to decedent's death and Buckley's injuries.

## COUNT 2:

### § 1983 CAUSE OF ACTION
### RATIFICATION

42. Plaintiffs incorporate all allegations set forth in Paragraphs 1 through 41.

43. MTC, its policy makers, and Doe Defendants 1-100 were advised about the threats against Jenkins and Buckley and their fear for their safety. MTC by and through its policy makers, ignored evidence of widespread disregard of policies and procedures intended for the protection of inmates including Jenkins and Buckley and systemic deficiencies that violated their constitutional rights. Based on information and belief, not one officer, supervisor, or any other

Case 5:22-cv-00026-DCB-FKB   Document 1   Filed 04/10/22   Page 11 of 14

person was disciplined, considered for discipline, or even retrained on policies intended for the protection of inmates. Instead, the policy makers approved the actions of the correctional officers.

44. Through these acts and omissions of ratification, MTC's policymakers were deliberately indifferent to Jenkins and Buckley's constitutional rights as set forth herein. A plaintiff can establish a municipal liability claim by showing that a final municipal policymaker approved an investigation that was "so inadequate as to constitute a ratification" of the misconduct. *Wright v. City of Canton,* 138 F.Supp.2d 955, 966 (N.D. Ohio 2001). "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). An isolated decision by a municipal official that is not intended to control future decisions can nonetheless give rise to municipal liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). MTC ratified the actions of its employees; and is therefore, is liable for the decedent's death and Buckley's injuries.

## COUNT 3:

## NEGLIGENCE/GROSS NEGLIGENCE

45. Plaintiffs incorporate all allegations set forth in Paragraphs 1 through 44.

46. At all times, relevant herein, defendants and their employees had a duty to exercise ordinary care for the inmates at. EMCF, including Buckley and the decedent. Defenders in their employees breached that duty, by failing to use the ordinary care that a reasonable person will use to avoid and prevent injury to others, i.e. in the case sub judice, to reasonable protect Buckley and the decedent from harm by other inmates. Defendants' breach of this duty led to the permanent damage sustained by the Plaintiffs. This breach was so egregious as to amount to gross negligence.

11

47. The death of Bobbie Jenkins and the injuries sustained by Steven Buckley were the reasonably foreseeable outcome of Defendants and their employees' acts and omissions. These acts and/or omissions were the substantial factors in causing the death of Bobby Jenkins and injuries to Steven Buckley.

## COUNT 4:

### NEGLIGENT HIRING AND SUPERVISION

48. Plaintiffs incorporate all allegations set forth in paragraphs 1 through 47.

49. Plaintiffs allege Defendants MTC and John Doe Defendants 1 through 100 negligently hired, supervised and retained their employees and agents by: (1) failing to properly care for Jenkins and Buckley's safety and well-being while incarcerated at EMCF: (2) failing to properly train, supervise discipline retain, hire, and/or discharge its employees, agents and/or representatives; (3) and were otherwise negligent or grossly negligent in their and treatment of the decedent and Buckley, and as a direct, proximate result, Plaintiff sustained the harm alleged herein.

## COUNT 5:

### RESPONDEAT SUPERIOR/VICARIOUS LIABILITY

50. Plaintiffs incorporate all allegations set forth in paragraphs 1 through 49.

51. Defendants MTC and other unknown EMCF correctional officers (Does 1-100) acted with negligence, gross negligence, and/or intentionally allowed or failed to prevent the attack on the decedent and Buckley.  At all times relevant, each Defendant owed a duty to the Plaintiffs to ensure their safety, and the Defendants breached that duty. The actions and inactions of Defendant MTC and/or other EMCF correctional officers led directly to the injuries suffered by the Plaintiffs. Defendant MTC, as Defendant John and Jane Does 1-100's employer is liable for

their actions which were undertaken during the course and scope of their employment with Defendant MTC.

52. Defendant MTC is also responsible for the actions and/or inactions alleged herein against Defendants John and Jane Does 1-100 which caused the damages suffered by the Plaintiffs. Such actions and/or inactions by said individual Defendants were committed within the course and scope of their employment with Defendant MTC.

## COUNT 6:

## PUNITIVE DAMAGES

53. Plaintiffs incorporate all allegations set forth in paragraphs 1 through 52.

54. The Defendants have acted in complete disregard for the safety of the Plaintiff by acting in a grossly negligent manner as previously described herein. The actions of the Defendants warrant punitive damages.

55. The Defendants' actions exhibit gross negligence and direct disregard of the safety of Plaintiffs'. Punitive damages should be awarded against the Defendants. Defendants' tortuous actions have caused bodily injuries, emotional distress, and mental anguish.

## PRAYER FOR RELIEF

56. Plaintiff Steven Buckley and Plaintiff Yolanda Almons, individually and on behalf of the wrongful death beneficiaries of Bobbie Jenkins, deceased, respectfully prays for the following relief:

> a. Actual and general compensatory damages of, from and against the Defendants, in amount to be determined by this Court;

    b. Punitive damages of, from and against the Defendant Sheriff Walker and Warden Smith, in their individual capacities, in an amount to be determined by this Court.

    c. Payment of the Decedent's funeral expenses;

    d. Reasonable attorney's fees and all costs of this Court;

    e. Pre and post judgement interest; and

    f. Such other general and specific relief as appears reasonable and just in this cause.

RESPECTFULLY SUBMITTED, THIS 10th day of April 2022.

STEVEN BUCKLEY AND YOLANDA ALMONS, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE ON BEHALF OF THE WRONGFUL DEATH BENEFICARIES OF BOBBIE JENKINS, DECEASED

By: /s/ LaToya T. Jeter_____
    LATOYA T. JETER
    *Attorney for Plaintiff*

OF COUNSEL:

LaToya T. Jeter (MSB. NO. 102213)
Katrina S. Brown (MSB. NO. 102110)
BROWN BASS & JETER, PLLC
Post Office Box 22969
Jackson, Mississippi 39225
Telephone: (601) 487-8448
Facsimile: (601) 510-9934
Email: jeter@bbjlawyers.com
Email: brown@bbjlawyers.com